UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| | : | |
| AKHYA N. WITHERSPOON, | : | Bankruptcy No. 06-10813DWS |
| | : | |
| Debtor | : | |

# ORDER

**AND NOW** this 21st day of June 2006, upon consideration of the Debtor's Motion to Reconsider (the "Reconsideration Motion") Order Denying Motion to Extend the Automatic Stay (the "Order");

**And** after notice and hearing on June 1, 2006;[1]

**And** the Court finding that (1) Debtor's last case was dismissed for lack of payment to the Trustee notwithstanding a wage order which Debtor attributed to her counsel's terminating the wage order contrary to her wishes;[2] (2) Debtor filed a Motion to Extend the

---

[1] I allowed Debtor to file a brief in lieu of closing arguments. The Letter Brief in Support of Motion for Reconsideration ("Letter Brief") was filed on June 13, 2006, and the Reconsideration Motion is therefore ripe for adjudication.

[2] Debtor testified that she had the money and was prepared to make the Trustee payments but her former lawyer John McClain prepared a letter to her employer terminating the attachment. (Counsel's ability to unilaterally terminate wage orders has since been ceased.) While she acknowledges signing the letter, she stated that it was not supposed to be sent without

Stay ("Extension Motion") pursuant to §362(c)(3) contending that her financial condition had improved in that in addition to her salary from Blockbusters that she had received in the last unsuccessful case, her expenses were now less because her sister was providing child care without charge; (3) on March 30, 2006 I entered an Order ("March Order") extending the stay for 30 days based on Debtor's representation to the Court and the Chapter 13 trustee (the "Trustee") that she would submit to a wage order that would assure timely current payments to the Trustee; (3) the March 30 stay extension was time limited in order to allow Debtor's counsel to investigate why the prior case wage order was terminated since the Court, upon recommendation of the Trustee, would only allow a further stay extension on the condition that a wage order was in place; (4) on April 19, Debtor's counsel filed an application for a wage order directed to Blockbuster's, the employer identified in Debtor's Schedule I; (5) a hearing was scheduled for April 25, 2006 to consider a further extension of the stay for the duration of the case depending on the outcome of the wage order investigation; (6) at the April 25 hearing upon examination of the Debtor by the Trustee, it was discovered that Debtor had been terminated from her employment prior to this Court's March 30, 2006 hearing but had not disclosed that fact to her attorney or the Court because she was "embarrassed" and thought she would quickly find another job; (7) while not disclosing the termination prior to the March hearing, on April 20 Debtor advised Steven Axelrod, Esquire

---

her approval but he did so when he found she was behind on the payments she was required to make to the mortgagee under a stipulation settling relief from the stay. McClain did not appear but disputes the Debtor's account, advising the Trustee that the termination was authorized.

("Axelrod")[3] that she did not have a job; (8) on April 25 Debtor appeared with Axelrod and neither advised the Court that Debtor was unemployed and that the wage order was accordingly ineffective;[4]

**And** a hearing having been held on the Reconsideration Motion on June 1, 2006 at which the Debtor testified that she was terminated by Blockbuster's on March 15, 2006 but was now receiving unemployment of $351 per week as well as assistance from her sister of $325.00 per month;[5]

**And** a motion for reconsideration is governed by Federal Rule of Civil Procedure ("Fed.R.Civ.P.") 59(e) which is applicable in bankruptcy cases pursuant to Federal Rule of Bankruptcy Procedure 9023;

---

[3] Debtor was represented at the first hearing by Chi B. Chung, Esquire ("Chung"). When I scheduled a further hearing, she advised me that she would be on vacation. Since the stay would expire, I could not continue the hearing further and stated that she should get Stephen Axelrod, Esquire ("Axelrod"), the head of the firm she was affiliated with, to cover for her and to make sure he was briefed on the issues. She agreed and was not involved in the events that followed. Axelrod seeks to distance himself from the matter by contending Debtor was not his client. See note 8 infra. From her testimony, it is clear that Debtor thought otherwise.

[4] Axelrod stood there silently listening to the Trustee tell me that the wage order had been docketed and that based on that assurance, she had no objection to the Extension Motion. He claims he did not hear her state that position.

[5] An Income Contribution Affidavit was signed on May 31, 2006, by Dene D. Silver, Debtor's sister, committing to monthly payments of $325.00. She appeared at the June 1 hearing and testified that she learned a couple of weeks previously about Debtor's bankruptcy when she was requested to sign the Affidavit. She has had her babysitting business and concomitant income for 3 months. Notably there was no representation in the Extension Motion or at either the March 30 or April 25 that Debtor's sister would contribute income to her plan.

3

**And** "the purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence," Harsco Corp. v. Zlotnicki, 779 F.2d 906, 908 (3d Cir. 1985), cert. denied, 476 U.S. 1171 (1986);[6]

**And** "[f]ederal district courts should grant such motions sparingly because of their strong interest in finality of judgment," Seleras v. M/V Cartagena de Indias, 959 F. Supp. 270 (E.D. Pa. 1997) (quoting Continental Cas. Co. v. Diversified Indus., Inc., 884 F.Supp. 937, 943 (E.D. Pa. 1995));

**And** a party may not submit evidence that is not newly discovered in support of a motion for reconsideration. Harsco, 779 F.2d at 909[7];

---

[6]    The purpose of a Rule 59(e) motion is to allow the court to reevaluate the basis of its decision. ... Motions for reconsideration are not at the disposal of an unsuccessful party to "rehash" the same arguments and facts previously presented.

Keyes v. National Railroad Passenger Corporation, 766 F.Supp. 277, 280 (E.D. Pa. 1991) (citations omitted).. See also Reich v. Compton 834 F.Supp. 753, 755 (E.D. Pa. 1993), aff'd in part, rev'd in part on other grounds, 57 F.3d 270 (3rd Cir. 1995). The court in Durkin v. Taylor, 444 F.Supp. 879, 889 (E.D. Va. 1977) stated that "[w]hatever may be the purpose of Rule 59(e) it ... [was not] ... intended to give the unhappy litigant one additional chance to sway the judge".

[7]    To constitute newly discovered evidence for which a new trial may be granted under Rule 59(a), the evidence must pertain to facts in existence at the time of the trial, and not to facts that have occurred subsequently. ... To warrant a new trial the evidence must not have been known to the movant at the time of the trial; and, moreover, the movant must have been excusably ignorant of the facts, i.e., the evidence must be such that it was not discoverable by diligent search.

6A Moore, Moore's Federal Practice ¶59.08[3], at 59-101 to 59-102 (2d ed. 1995) (citations omitted). There is no newly discovered evidence in this case.

4

**And** in support of the Reconsideration Motion, Debtor averring that (1) there were errors in fact[8] and in law; (2) the granting of the Order resulted from mistake and inadvertence and that in the interests of justice the Order and/or findings should be vacated;

**And** §362(c)(3)(C)(i)(III), applicable here, requires a debtor to present evidence at a hearing to be completed 30 days after the filing of the petition to rebut the presumption of

---

[8] The only mistake of fact that I made was my assumption that Chung was still an associate of Axelrod's firm, Safe Haven Legal Services, Inc. as opposed to their having a new relationship wherein Axelrod's firm is "of counsel" to her. However, Ms. Chung never told me otherwise. Indeed I specifically asked her whether someone from her office could appear, "like Mr. Axelrod? Does he, you're still with him, aren't you?" she responded, "Yes." Axelrod, with Chung's support, seeks to excuse himself from the failure at the April 25 hearing to disclose the material change of Debtor's circumstances of which he was previously advised by claiming that he was not her lawyer but merely substituting for Chung on a very limited basis.

Rule 3.3 of the Pennsylvania Rules of Professional Conduct provides that "[a] lawyer shall not knowingly ...fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." Chung now argues in her Letter Brief that Axelrod made no false statement (it was made by Chung) so he had no duty to correct it. Chung also argues on behalf of Axelrod that I concluded to report the ethical violation, presumably to disciplinary authorities, and that was an unfair response to his "mistake, inadvertence and excusable neglect" where no further hearing was held. Suffice it to say that I never stated that I intended to make a referral but rather that I would consider further action by me to address what I believed then and still believe was lack of candor to this Court. Axelrod was advancing a position (albeit one framed by Chung on incorrect facts) that he knew was invalid. I accept that he did not intend to mislead the Court, but in fact he did and should have known that he did. By stepping in for Chung in the prosecution of the Debtor's request for further relief past the 30 day extension, he was required to correct the false statement upon which the Court was relying in entering a further order. While Chung may have agreed that Axelrod should appear as a "courtesy" and could limit his role, I specifically directed Chung to brief him on all issues and expected him to conduct himself as any lawyer seeking relief from this Court- fully, knowledgeably and responsibly. Unless making clear to the Court a limitation in a court appearance, a substituting lawyer has the same responsibilities as the lawyer of record: to be prepared by knowing the facts of the case, the relief sought and the basis therefore. In short, I reject Axelrod's justification and Chung's belief that the views I expressed on this subject were erroneous as a matter of fact or law. Axelrod advises that he is about to retire and requests that I excuse his conduct out of deference to his many years of unblemished service. I do not excuse his conduct but I conclude that my comments to him about this episode are a sufficient sanction and no further action is necessary given his imminent cessation of the practice of law.

bad faith resulting from the fact that a case was dismissed within the year and there has not been a substantial change in circumstances in the personal or financial affairs of the debtor since the dismissal or any other reason to conclude that a confirmed plan will be performed;

**And** Debtor arguing in her Letter Brief that I erred in not extending the stay for the duration of the case because I did not find bad faith at the March 30 hearing, that I completed the hearing, that there was no condition of the March 30 Order that a wage order be entered, that a wage order, being prospective, cannot be relevant to good faith at the time the petition was filed, and that I found that there was a change of circumstance;

**And** the representations that the Debtor made at the March 30 and April 25 hearing being false, and the March 30 Order extending the stay as to all creditors being based on (1) false or misleading testimony, (2) schedules no longer correct and (3) the erroneous conclusion that the presumption of bad faith was rebutted with consent to a wage order that would assure that a confirmed plan would be performed;

**And** the Court refusing to extend the stay further upon learning of the misrepresentations and finding nothing in this record that indicates that the ruling was erroneous;[9]

---

[9] At the end of the March 30 hearing I extended the stay **for thirty days**, a limiting condition. (With respect to the contention that the hearing was completed, perhaps suggesting that I could rule no more, I would remind counsel that the stay expired after the 30th day of my Order and on that theory, could not be extended further. ) The change of circumstance I found on March 30th was that in addition to the continued employment at Blockbusters which would secure Trustee payments through a wage order, Debtor had reduced her child care expenses. Because the wage order which I find a material factor in my assessment of "whether a confirmed plan will be performed, did not work in the last case, I wanted to assure that it would in this case. Debtor attributed its failure to her prior attorney and I asked the Trustee and counsel to

6

**And** the Court concluding that what the Debtor seeks to do is to present a totally new case for extending the stay and have this Court give it retroactive effect;[10]

**And** the Court finding that to do so would be contrary to the Bankruptcy Code as well as the interests of justice since the need for the new case is a result of the false case presented earlier;

It is hereby **ORDERED** that the Motion is **DENIED**.[11]

*Diane W. Sigmund* (signature)

_____
DIANE WEISS SIGMUND
Chief U.S. Bankruptcy Judge

---

investigate. Thus, on March 30 I found good faith established on facts that were subsequently found to be false- that she had a wage and a wage order could be implemented. The notion that the Court is bound to findings that were based on false information is a startling one and one that goes beyond the realm of proper advocacy. In any event, in limiting the stay extension to 30 days, it should have been apparent to counsel that a further extension was still an open issue.

[10] The new case that Debtor seeks to present is too little, too late. Debtor was required to complete the hearing on the Extension Motion within 30 days and is not permitted to make a new case on reconsideration. Thus her evidence that the combination of her unemployment compensation and sister's contribution exceed her income when she was employed is not relevant. In any event, neither the income from her sister's business started in the past few months nor her unemployment (that strangely exceeds her wages) provide the assurance of a wage attachment which was the basis of the original extension. Moreover, the statement in her letter brief that she is now employed is an improper attempt to amend the record.

[11] Chung has represented that the mortgage company has no opposition to the Extension Motion. As I do not know whether it is aware of the facts elicited in these hearings since it did not appear, I cannot conclude that its position is based on a knowing consent. However, if the mortgage company (versus all creditors), is agreeable to supporting further bankruptcy relief, the Debtor may file a complaint to reinstate the stay as to that creditor only, attaching this Order and serving it under applicable adversary rules. The Court will consider a limited stay with the creditor's **expressed agreement** to the relief requested or under a stipulated settlement.